USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 4/10/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,

v.

ALAN T. SHEINWALD; ALLIANCE
ADVISORS, LLC,

                Defendants.

No. 12-CV-5811 (RA)

MEMORANDUM
OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Defendants Alan Sheinwald and Alliance Advisors, LLC ("Alliance") seek to modify the permanent injunction entered by this Court as part of a final judgment on March 14, 2014. Plaintiff Securities and Exchange Commission (the "SEC") opposes the motion. For the foregoing reasons, Defendants' motion is denied.

## BACKGROUND

Sheinwald was the founder and president of Alliance, an investor relations firm. On July 30, 2012, the SEC filed this action, alleging that Sheinwald and Alliance had violated Section 15(a) of the Securities Exchange Act of 1934 by acting as unregistered brokers in connection with securities offerings for two companies.[1]

On March 14, 2014, Defendants and the SEC notified the Court that they had reached a settlement. See Dkt. 53 (March 14, 2014 Joint Ltr.). With this letter, they filed a proposed final judgment with an executed consent to the entry of this proposed final judgment from Sheinwald

---

[1] This action was also brought against a third defendant, Ren Hu. See Dkt. 25 (Second Amended Complaint). Defendant Hu, however, was not a party to the final judgment at issue here. See Dkt. 54.

and Alliance. *See id.* The final judgment, which the Court entered that day, included the following permanent injunction:

> Defendants and Defendants' agents, servants, employees, attorneys and all persons in active concert or participation with Defendants who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 15(a) of the Securities Exchange Act of 1934 [15 U.S.C. § 78o(a)] to make use of the mails or any means or instrumentality of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of, any security unless such broker or dealer is registered with the Commission as such or associated with an entity registered with the Commission as a broker or dealer.

Dkt. 54. The final judgment also included an agreement that Defendants were "liable on a joint and several basis for disgorgement of $177,166," as well as prejudgment interest of $18,022, and civil penalties of $25,000 for each Sheinwald and Alliance.[2] *Id.*

Several weeks later, on April 2, 2014, the SEC issued an Order Instituting Administrative Proceedings Pursuant to Section 15(b) of the Securities Exchange Act of 1934, Making Findings, and Imposing Remedial Sanctions (the "Order") against Sheinwald and Alliance, who "consent[ed] to the entry of this Order." Dkt. 65, Ex. 1 (Apr. 2, 2014 Order). The Order first explained that neither Sheinwald nor Alliance was registered with the SEC and thus both were acting as unregistered brokers. Then, noting the final judgment entered in this Court a few weeks prior, it stated that the SEC, as a result, "deem[ed] it appropriate and in the public interest to impose the sanctions agreed to in Respondents Sheinwald and Alliance Advisors' Offer." *Id.* It thus ordered that:

> Sheinwald and Alliance be, and hereby are, . . . barred from association with any broker, dealer, investment adviser, municipal securities dealer, or transfer agent; barred from participating in any offering of a penny stock, including: acting as a promoter, finder, consultant, agent or other person who engages in activities with a broker, dealer or issuer for purposes of the issuance or trading in any penny stock, or inducing or attempting to

---

[2] On February 19, 2015, the SEC recognized the "full and complete satisfaction of the monetary portions of said judgment as to Alan Sheinwald" and a "partial satisfaction of the monetary portions of said judgment as to Alliance Advisors LLC[.]" Dkt. 58.

2

induce the purchase or sale of any penny stock, with the right to apply for reentry after two years to the appropriate self-regulatory organization, or if there is none, to the Commission.

*Id.*

With the Order, the SEC issued a Litigation Release. The Litigation Release began by announcing the terms of "[t]he final judgment permanently enjoin[ing] Sheinwald and Alliance Advisors LLC from future violations of Section 15(a) of the Securities Exchange Act of 1934" and imposing monetary penalties. Dkt. 65, Ex. 2 (Apr. 1, 2014 Litigation Release). It then noted that, "[b]ased on the final judgment," the SEC had issued the Order, which "bars Sheinwald and Alliance Advisors by consent from association with any investment adviser, broker, dealer, municipal securities, dealer, or transfer agent[.]" *Id.*

On July 1, 2014, Equifax Compliance Data Center, LLC sent an Advisory Notice, which it had previously issued about Defendants, to Scottrade. The Advisory Notice summarized the final judgment and Order, explaining that, "[b]ased on the final judgment, the Commission issued an Order . . . that bars Sheinwald and Alliance Advisors by consent from association with any investment adviser, broker, dealer, municipal securities dealer, or transfer agent . . . with the right to apply for reentry after two years."[3] Dkt. 59, Ex. 6 (Equifax Advisory Notice). Defendants contend that Scottrade terminated Sheinwald's brokerage account at an unspecified time after receiving Equifax's Advisory Notice. Defendants also state that Park Avenue Securities terminated

---

[3] In their motion, Defendants describe Equifax's Advisory Notice as follows:

> Equifax Compliance Data Center, LLC, published an advisory notice, stating, in pertinent part, that "Defendants are enjoined from future violations of Section 15(a) of the Securities Exchange Act of 1934, Defendants are barred from association with any investment advisor, broker, dealer, municipal securities dealer, or transfer agent, and Defendants are enjoined from participating in any offering of any penny stock, with the right to apply for reentry after two years.

Defs.' Mot. at 3. This description is slightly misleading. The Advisory Notice did not – contrary to what Defendants' description suggests – state that all of the listed penalites and limitations on Defendants arose from the final judgment.

Sheinwald's brokerage account but do not say when or if it received the Advisory Notice. Nor have Defendants provided documentary proof of closure of either account.

In August 2018, Sheinwald also received a letter from E*TRADE Securities LLC ("E*TRADE"), stating that it "ha[d] decided to exercise its discretion to close the above-referenced accounts." Dkt. 59, Ex. 5 (E*TRADE Ltr.). E*TRADE's letter did not reference the permanent injunction or the Order. Rather, the only reason provided for closing Sheinwald's account was that "E*TRADE Securities reserve[d] the right to terminate [his] Account or to block [his] access to the Service without notice, for any reason or no reason." *Id.*

In addition, in the years following the entry of the final judgment and the Order, Sheinwald twice asked the SEC to modify the Order. First, in March 2016, Sheinwald requested that the SEC vacate the Order "to the extent that it bars him from association with any nationally recognized statistical rating organization ('NRSRO') or municipal advisor." Dkt. 65, Ex. 3 (Aug. 2, 2016 Order); *see also* Pl.'s Opp. at 4. The SEC denied his request on August 2, 2016, explaining that the Order "did not . . . bar him from association with an NRSRO or a municipal advisor." *Id.* In December 2017, Sheinwald again sought to vacate the Order, but this time "to the extent that it bars him from association with an investment adviser, municipal securities dealer, or transfer agent, subject to a right to reapply after two years." Dkt. 65, Ex. 4 (July 5, 2019 Order); *see also* Pl.'s Opp. at 4. On July 2019, acting "in [its] discretion," the SEC granted Sheinwald's request to vacate this language but "otherwise le[ft] the Order unmodified." *Id.*

On November 26, 2019, Defendants filed the present motion to modify the permanent injunction in the final judgment. They allege that, "[f]ollowing the entry of the Injunction in this matter, numerous un-related, third parties have repeatedly misinterpreted the Injunction as having

4

a much broader application than contemplated by the plain language of the Injunction itself." Defs.' Mot. at 2-3. The SEC opposed Defendants' motion.

## LEGAL STANDARD

"[A] continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need," even if "it was entered by consent." *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932). As such, "[t]he power of a court of equity to modify a decree of injunctive relief is long-established, broad, and flexible." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 706 F.2d 956, 967 (2d Cir. 1983).

Federal Rule of Civil Procedure 60(b) "state[s] this inherent power as a rule," *Sierra Club v. U.S. Army Corps of Eng'rs*, 732 F.2d 253, 256 (2d Cir. 1984), permitting, "[o]n motion and just terms, the court may relieve a party of its legal representative from a final judgment, order, or proceeding" if – as relevant in this action – "applying [the judgment] prospectively is no longer equitable" or for "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(5)(6). "[T]he Rule provides a means by which a party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" *Horne v. Flores*, 557 U.S. 433, 447 (2009) (citation omitted); *see also Sierra Club*, 732 F.2d at 256 ("[A] court may modify a final or permanent injunction only where conditions have so changed as to make such relief equitable, *i.e.*, a significant change in the law or facts."). "The party seeking relief bears the burden of establishing that changed circumstances warrant relief[.]" *Horne*, 557 U.S. at 447.

## DISCUSSION

Defendants seek to modify the permanent injunction to "clarify that [they] are not prohibited or enjoined from: (1) owning brokerage accounts; (2) trading with a brokerage account;

(3) participating in stock offerings; (4) trading on behalf of a hedge fund; or (5) voting as a general partner of a hedge fund."[4] Defs.' Mot. at 1. They contend that the injunction is currently "being misinterpreted by third parties" to bar this activity, and thus they have "suffered significant harm." Defs.' Mot. at 4. Citing Federal Rules of Civil Procedure 60(b)(5) and 60(b)(6), Defendants suggest that modification of the permanent injunction is permitted because factual circumstances render the injunction no longer equitable.[5] *See* Defs.' Reply at 3. The Court, however, agrees with the SEC that Defendants have "failed to establish the significant change in factual conditions required" for the Court to modify a final judgment. *Agostini v. Felton*, 521 U.S. 203, 216 (1997).

The Court first notes that "the language in the injunction is clear." Pl.'s Opp. at 6. It does not bar Defendants from owning or trading with brokerage accounts, participating in stock offers, trading on behalf of a hedge fund, or voting as a general partner of a hedge fund, but solely prohibits future violations of Section 15(a) of the Securities Exchange Act. *See* Dkt. 54. Defendants acknowledge this, explaining that their present motion only asks this Court to clarify that they are not prohibited or enjoined from certain activities. *See* Defs.' Mot. at 1. But still, Defendants do not identify what language in the permanent injunction is causing the alleged confusion among third parties or why that language would lead third parties to believe that Defendants are "enjoin[ed] . . . from partaking in a much broader category of legal activities than

---

[4] The SEC also seems to argue that Defendants' motion is untimely. *See* Pl.'s Opp. at 7 n.6. A party seeking relief pursuant to Rule 60(b) must file that motion "within a reasonable time[.]" Fed. R. Civ. P. 60(c)(1). The Court does not find this to be a compelling reason to deny Defendants' motion. *See PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 897 (2d Cir. 1983) (requiring a court to "scrutinize the particular circumstances of the case, and balance the interest in finality with the reasons for delay" when determining whether reasonable time has passed). Defendants have alleged sufficient changed circumstances over the past two years – including E*TRADE's closure of Sheinwald's account in 2018 and the SEC's decision to vacate part of the Order in July 2019 – to find their motion was filed in a timely fashion. *See* Pl.'s Reply at 5-6 ("The SEC ignores the well-established factual record that the Motion was filed after Defendants had exhausted all alternatives to achieve their goals, and, as such, was only pursued because they had no other option.").

[5] Although a change in law can also serve as a basis to grant relief under Rule 60(b), Defendants have not invoked that provision here as a basis for modifying the permanent injunction.

contemplated by the plain language of the Injunction itself." Defs.' Mot. at 1. The Court thus believes – as both parties seem to agree – the injunction's language and scope is clear. For that reason alone, the Court is hesitant to modify the final judgment.

But perhaps more significantly, even if the injunction's language was unclear, Defendants have also failed to establish that third parties are misinterpreting the permanent injunction – the factual circumstances that Defendants urge warrant modification of the permanent injunction. Defendants' basis for seeking this modification is that (1) Equifax issued an Advisory Notice, which was sent to Scottrade in July 2014; (2) E*TRADE closed Sheinwald's brokerage account in August 2018; and (3) Scottrade and Park Avenue Securities closed Sheinwald's brokerage accounts. They also rely on Sheinwald's declaration, which asserts that "the Injunction has become a burden" because he was "told by certain firms that [Equifax's] advisory was used as a reason for either declining to open an account for me or to close an already opened account." Dkt. 59, Ex. A (Sheinwald Decl.) ¶¶ 10-11, 13; *see also id.* ¶ 11 (alleging that "numerous securities firms have refused to open up such accounts for me because, as I have been told, the Injunction precludes them from doing so").

These facts do not establish that those (or any) third parties are misinterpreting the injunction or took actions, such as closing his brokerage accounts, *because of* the injunction. For instance, although Defendants assert that E*TRADE closed Sheinwald's account because of the injunction, E*TRADE's letter only states that it "has decided to exercise its discretion to close the above-referenced account," never mentioning the permanent injunction. Dkt. 59, Ex. 5. And as to Scottrade and Park Avenue Securities, Defendants do not even provide when – not even what year – those companies closed his account.[6] *See* Defs.' Mot. at 3. Defendants, therefore, ask the

---

[6] According to the SEC, "it appears that Scottrade had already closed Sheinwald's account (or was seriously considering taking that action) as of July 9, 2014, more than five years ago." Pl.'s Opp. at 7.

Court to assume that the closing of his brokerage accounts at Scottrade and Park Avenue Securities was related to Equifax's Advisory Notice, but provide no direct support on which the Court can ground that assumption. The final piece of evidence – Sheinwald's declaration – also provides nothing concretely establishing that third parties are misinterpreting the permanent injunction. In addition to the previously discussed assertions, Sheinwald's declaration states generally that the permanent injunction is hurting his "business and financial position" by precluding firms from working with him and that E*TRADE, Scottrade, and Park Avenue Securities informed him that the injunction was the reason that they closed his accounts. Dkt. 59, Ex. 1 ¶¶ 13-14.

Notably, when pressed by the SEC to articulate the basis establishing causation between the alleged harm and the permanent injunction, Defendants still did not offer anything more specific. Instead, they assert only that "[t]he Sheinwald Dec. and the annexed exhibits clearly lay out the factual support demonstrating the basis and necessity for this relief," and maintain that the SEC has not "controvert[ed] the facts as were laid out in these submissions," which "highlights the flimsiness of the SEC's arguments in opposition." Defs.' Reply at 5; *see also id*. at 6 ("[T]he uncontroverted evidence submitted by Defendants clearly indicates that it is the Injunction causing the interference in Defendants' business."). But Defendants fail to recognize that it is their burden – not the SEC's – to "establish[] that changed circumstances warrant relief." *Horne*, 557 U.S. at 447.

Furthermore, Defendants' claim that third parties are misinterpreting the permanent injunction is weakened because there is a reasonable alternative, which the Court lacks control over, possibly causing the alleged third-party confusion: the SEC's Order instituted on April 2, 2014. That Order explicitly "barred [Defendants] from association with any broker, dealer, investment adviser, municipal securities dealer, or transfer agent." Dkt. 65, Ex. 1. Moreover, the

SEC issued a Litigation Release after instituting the Order, thus notifying the public of this sanction on Defendants. *See* Dkt. 65, Ex. 2. As such, the Court finds it more likely that any of the alleged third-party actions stemmed from the Order – not the injunction – and thus agrees with the SEC that Defendants incorrectly assume that any confusion "is attributable to the injunction rather than to the Commission Order, the resulting publicity about their misconduct, other factors, or some combination thereof that could not be undone by a modified injunction." Pl.'s Opp. at 6. In any event, Defendants may present the SEC's briefing on this motion to third parties to clear up any possible confusion that may exist regarding the injunction's scope.

As a final matter, although Defendants have requested a modification of the injunction to permit them to "trade on behalf of a hedge fund" and "vote as a general partner of a hedge fund," nothing in their submissions discusses any work that they do with hedge funds or how that work has been affected by the injunction. Defs.' Mot. at 5. Indeed, Sheinwald's declaration does not even include the phrase "hedge fund."

Accordingly, the Court concludes that Defendants have not met their burden of demonstrating that "conditions have so changed as to make such relief equitable," as required under Rule 60(b). *Sierra Club*, 732 F.2d at 256; *see also Agostini*, 521 U.S. at 216 ("Obviously, if neither the law supporting our original decision in this litigation nor the facts have changed, there would be no need to decide the propriety of a Rule 60(b)(5) motion."). The permanent injunction's language and scope is clear. And based on the evidence submitted, there is an insufficient basis to find causation between the permanent injunction and the third parties' closure or refusal to open brokerage accounts associated with Defendants. Modifying the injunction based on the present motion, therefore, would be either based on speculation or without a finding of changed circumstances – both contrary to the Second Circuit's precedent. *See N.Y. State Ass'n for*

*Retarded Children*, 706 F.2d at 968 ("We are asking ourselves whether anything has happened that will justify us now in changing a decree. The injunction, whether right or wrong, is not subject to impeachment in its application to the conditions that existed at its making." (quoting *Swift*, 286 U.S. at 119)); *United States v. Dist. Council of N.Y.C.*, No. 90-CV-5722 (CSH), 1999 WL 494121, at *6 (S.D.N.Y. July 12, 1999) ("The Second Circuit has cautioned that to warrant the modification of a decree, the changed circumstances relied upon must be concrete, not 'speculative and insubstantial.'" (quoting *United States v. County of Nassau*, 907 F.2d 397, 397 (2d Cir. 1990))).

## CONCLUSION

For foregoing reasons, Defendants' motion to modify the final judgment is denied. The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 59 and to close the case.

SO ORDERED.

Dated:    April 10, 2020
           New York, New York

RONNIE ABRAMS
United States District Judge